## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| TIMOTHY GRIFFITH | ) |
| | ) CIVIL ACTION NO. |
| Plaintiff | ) |
| | ) |
| v. | ) COMPLAINT |
| | ) |
| | ) JURY TRIAL DEMANDED |
| LEXISNEXIS RISK SOLUTIONS, INC. | ) |
| | ) |
| Defendant. | ) |

### PRELIMINARY STATEMENT

1. This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq. as amended.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### PARTIES

4. Plaintiff Timothy Griffith is an adult individual residing in Vermont.

5. Defendant LexisNexis Risk Solutions Inc., ("LexisNexis"), is a consumer reporting agency which regularly conducts business in the Northern District of Georgia, and which has a principal place of business located at 1000 Alderman Drive, Alpharetta, GA 30005.

## FACTUAL ALLEGATIONS

### *Defendant's Practices Concerning the Sale of Reports on the "Deceased"*

6. Defendant is regulated as "consumer reporting agencies" ("CRA") under the FCRA 15 U.S.C. § 1681a(e).

7. Defendant sells millions of consumer reports (often called "credit reports" or "reports") per day, and Defendant also sells credit scores. 15 U.S.C. § 1681a(e).

8. Pursuant to the FCRA, Defendant must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

9. Pursuant to the FCRA, Defendant must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§ 1681e(a) & 1681b.

10. Defendant places a "deceased" notation or marking on reports when it is advised from any of its many data furnishing sources that a given consumer is deceased.

11. The furnishing sources identify "deceased" consumers by marking the "status" of such consumer's responsibility for any subject account with an "X" code in the ECOA field of an electronic data input format used in the credit reporting industry, known as Metro or Metro 2.

12. Defendant does not request or require a death certificate from any of its data sources which advise that a consumer is "deceased" before placing a "deceased" mark on that consumer's report.

13. Defendant does not request or require any proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

14. Defendant does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

15. A deceased notation is a very unusual marking upon a credit file or credit report.

16. Defendant employs no procedures *at all* which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

17. Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, Defendant employs no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

18. Even in instances where the purportedly deceased consumer communicates directly with Defendant, Defendant employs no procedures which assures that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

19. Once a "deceased" mark is placed upon a consumer's report, Defendant will not calculate and will not provide a credit score for that consumer.

20. Nevertheless, Defendant routinely sells to third parties credit reports for persons with a "deceased" mark on their reports with no credit score, despite a request by the purchaser of the report for a credit score for that consumer.

21. Upon Defendant's reports with a "deceased" mark sold to third parties Defendant's never calculate or provide a credit score for that consumer.

22. Defendant knows that third party credit issuers use a credit score in order to process a given credit application.

23. Defendant knows that many third-party credit issuers require a credit score in order to process a given credit application.

24. Defendant knows that consumers without credit scores are unable to secure any credit from most credit issuers.

25. Defendant knows that living consumers are turned down for credit specifically because Defendant are reporting them as "deceased" and without a credit score.

26. Defendant charges third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

27. Defendant profits from the sale of reports on the deceased.

28. Defendant knows that truly deceased consumers do not apply for credit.

29. Defendant has no death certificate, executorship paper, or any other proof requirements for its data sources which report a consumer as deceased or for the buyers of its reports which access the purportedly deceased consumer's information.

30. Indeed, Defendant sells reports on the deceased to third parties in an automated fashion and without any specific or general certification that could

reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

31. For consumers who are deceased, there exists no permissible purpose under the FCRA for Defendant to ever sell their credit reports, absent a court order.

32. Defendant knows that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

### *Case Specific Facts*

33. Plaintiff has been marked by Defendant as "deceased" on his LexisNexis consumer reports since at least September 2023.

34. Plaintiff is not deceased.

35. Defendant did not calculate or provide any credit score for or on Plaintiff, even though they sold reports about him to third parties marking him as "deceased."

36. Prior to sale of their consumer report about Plaintiff, Defendant did nothing to investigate the information received regarding the deceased notation.

37. Defendant continues to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors. Defendant

has repeatedly published and disseminated consumer reports to such third parties from at least September 2023 through the present.

38. As a result, Defendant made it practically impossible for Plaintiff to obtain credit.

39. Further, when Plaintiff requested his consumer disclosure from Defendant, Defendant failed to provide him with a copy of his disclosure, which concealed the fact that Defendant had marked Plaintiff deceased.

40. By providing failing to provide Plaintiff with a copy of his disclosure, Plaintiff was unable to dispute the inaccuracy.

41. As a result of Defendant's conduct, Plaintiff has suffered actual damages in the form of credit denial or loss of credit opportunity, credit defamation and emotional distress, including anxiety, frustration, embarrassment and, humiliation.

42. At all times pertinent hereto, Defendant was acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

43. At all times pertinent hereto, the conduct of Defendant, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff herein.

## COUNT ONE – VIOLATIONS OF THE FCRA
## PLAINTIFF v. DEFENDANT

44. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

45. At all times pertinent hereto, Defendant was a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

46. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

47. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

48. Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Defendant is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency in violation of 15 U.S.C. § 1681e(b) and 1681g.

49. The conduct of Defendant is a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to

the Plaintiff that are outlined more fully above and, as a result, Defendants are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## JURY TRIAL DEMAND

50.   Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendant, based on the following requested relief:

    (a)   Actual damages;

    (b)   Statutory damages;

    (c)   Punitive damages;

    (d)   Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

    (e)   Such other and further relief as may be necessary, just and proper.

Respectfully submitted,

**WEINER & SAND LLC**

BY:   */s/ Jeffrey Sand*
JEFFREY SAND, ESQUIRE
800 Battery Avenue SE
Suite 100
Atlanta, GA 30339
(404) 205-5029


*/s/ Joseph L. Gentilcore*
JOSEPH L. GENTILCORE, ESQUIRE
1600 Market Street
Suite 2510
Philadelphia, PA 19103
(215) 735-8600
(pro hac vice application forthcoming)

*Attorneys for Plaintiff*

Dated: February 21, 2024